Good morning, your honors. Good morning, counsel. May it please the court, my name is Luke Gleisner. I'm with the Gleisner Law Firm. We're here on behalf of the appellant, Joseph Wojcicki, and we're asking that this court reverse the circuit court's order. First, dismissing the appellant's claim under the False Claims Act for failure to procure counsel, and second, for failing to reverse that judgment on the motion to reconsider. The position that we take is that the circuit court made an error of law in its interpretation of the False Claims Act requiring that I have an initial question. The order was without prejudice, so how is it not an interlocutory appeal here? Sure, your honor. By nature of the statute, there's a very strict statute of limitations provision, and several provisions regarding the nature of the claim needing to be under seal in service of process, and the effect of the dismissal without prejudice would have been a dismissal with prejudice, your honor. How do we know that for sure? How do we know that for sure? I mean, sometimes amended complaints can relate back to the date that it was initially filed, regardless of the expiration of the statute of limitations. Sure, your honor. I think by nature of the unsealing of the case, any relation back would have been void. The impact was already made. When the circuit court entered the order unsealing the case, my understanding of the False Claims Act was that the effect was to preclude any amendment or a new filing of the claim with a relation back to the initial date of the filing. But so, because the pro se petitioner, appellant, filed a complaint that is now beyond the statute of limitations, the government or some other party standing in place of the government could never bring a T-10 action on this because of the actions of a pro se litigant in an order that is without prejudice. I think in terms of a related under the QUITAM statute, yes, your honor. I think the federal government has other rights, obviously, that it could bring an action against the respondent in this case, separate and apart from under the False Claims Act statute. But I think there's specific statutory limitations for the False Claims Act that apply specifically to a QUITAM action that I think preclude or elate her from bringing a claim as a result of the dismissal, even though it's technically without prejudice, your honor. And so, our position today is... That doesn't seem right. That seems like a reason that these claims need counsel. I think that's a very valid argument, your honor, as to why Congress might want to impose such a requirement. I think that's a valid reason why the government might argue. Under the statute, it has the right, under 31 U.S.C. 3730, subsection C, it has the right to move for the court to limit the ability of a relator to bring a claim without counsel. Unfortunately, there was no showing. The court sui sponte said you need counsel. It did not require some affirmative showing under the statute that there was some need for a limitation of the ability of the relator to bring this claim. The position that we have, your honor, or your honors, is that a proper reading of the statute would allow for a relator to bring a claim based upon two major areas. One, the language of the statute, obviously, where this court has to first look. And then second, the nature of the claim itself. I'd like to start with the nature of the claims. I think that's important. A lot of the circuits that have addressed this issue have had some very interesting readings of the U.S. Supreme Court's decisions, many of which have been very recent. The Vermont v. Stevens case, the Sprint Communications case, and the Eisenstein case, all three of those cases kind of address the nature of the claim. The Supreme Court in those cases are dealing with more of a standing issue, an article-free standing. But by doing that analysis, it provides some light to this circuit on what the Supreme Court deems to be the nature of the claim under the pre-tem action. The Supreme Court in the Stevens case was very clear, in my mind, but obviously some circuits disagree with that, that the relator's claim is not by way of an agency theory. That if the relator is bringing his claim as an agent of the U.S. government or on behalf of the U.S. government, he has no article-free standing. There's several paragraphs where Justice Scalia specifically lays out that cannot be the grounds for standing. So that cannot be the grounds for how a relator can bring a pre-tem action. And then he goes through a very lengthy analysis as to why this is more of an equitable assignment claim. That there is, in fact, rights and a claim, a legal right and an interest that the relator has to the claim. Do you agree that the general rule is that a party cannot represent another person, pro se? A pro se party cannot represent somebody else. We do not take the position. I agree with you. We don't take that position. I think the issue that we have is many courts, many other circuits. But isn't that what's happening here? The relator, pro se, is standing in the shoes of other parties? I think that is a reasonable reading of the statute, Your Honor. I agree with that. I think, but in light of the nature of the claim that's been defined by the Supreme Court. And what is the nature of the claim? It's an equitable assignment. That they are not a representative or an agent for the government in bringing their claim, but they have been assigned certain rights under the statute to bring claims on their own behalf. I think the Eisenstein case made it clear, and that was a 2009 decision, that the U.S. government is no longer even a party to the action. But it's a real party and interest, right? We can all agree. We can absolutely agree they are a real party and interest. So how do you sever that out? It seems to me the relator is maybe suing in part based on this partial assignment, but he's also suing on behalf of the government. I agree with you. The government is still the real party and interest. That he's bringing his action on behalf of the government. I believe that is perfectly reasonable. The government is going to be bound by res judicata, by the outcome of this case, right? Yes. Okay. Because it's a real party and interest. In many circumstances, res judicata would apply, yes, Your Honor. Right. Well, then how is he not? I mean, I agree. Ketam actions are a little weird, but it certainly seems like he's sort of suing both, and I think the statute says he's suing both on his own behalf and on behalf of the government. I think that's one way to read it, on behalf of the government. I don't think that's necessarily a way to read it, Your Honor. I don't think you have to read it so that he's bringing his claim on behalf of. I think if you look at the original wording of the statute. Okay. Then go with us that that's one way to read it. Sure. If that is one way to read it, how can a pro se litigant represent the interests of another party, the government? I think, okay, so if we start with the, I think you have to start with reading the statute with the premise that the Congress has enacted in this circuit, the Fourth Circuit, this Court has said in the 2005 decision of Myers v. Linden County, that there's this guaranteed right that a party has to be able to prosecute its own claims, that it has that right. You have to start with that premise when reading a statute. Many of the circuits, instead of starting with that premise, start with the opposite premise, the premise that you're presupposing that we should start with the premise that you can't bring the claim on your own behalf. But if we read the statute and it says, and. No, we're starting with the premise that you can't bring a claim on behalf of another party. Absolutely, Your Honor. I agree with that. Okay, and I'm sorry. And I finally found the statutory language, which is a person may bring a civil action for the person and for the United States government. So that's what the relator is doing. It's bringing an action. He is bringing an action for himself and for the United States government. So I don't see how this is his own case. Well, Your Honor, I think if you read the Stevens case. I'm just reading the language of the statute. Why don't you address that? A person may bring a civil action for a violation of the section for the person and for the United States government. But you are telling me the relator is not bringing the action for the United States government. And I don't see how I can reconcile that with the plain text of the statute. Well, I think there are instances, Your Honor, where a party can bring it on behalf of the government if represented by counsel. I don't necessarily think that the and requires that you're bringing it both at the same time. I think the and can be read in such a way that you're bringing it on your own behalf or you're bringing it on the government's behalf or you're bringing it on yours and the government's behalf. And I think that's perfectly reasonable in my mind reading in light of the fact that following that section is section... Well, unfortunately, following it is the sentence that says the action shall be brought in the name of the government. In the name of the government. You're right. You're right, Your Honor. And I think the Supreme Court in Eisenstein said that that's just in name only. They're not a party to the action if they don't elect to bring the action. The idea that somehow they have additional rights... That could apply to if you bring it for yourself. Even so, you still have to do it in the name of the government. But that doesn't mean you have to do it for both. Right. And I think that might be an answer to Judge Harris' question because it says you can bring it and the government, but then it says in the name of. But it might mean that even if you bring it for yourself, you still nominally have to do it in the name of the government. Go ahead. Yeah, and I don't think you necessarily have to say that the government is no longer a real party in interest. But there's a complete avoidance of the issue that the relator is a real party in interest. The Supreme Court has been very clear on this by being an equitable assignee of the claim, just as if any other party is assigned a claim by some third party, a corporation or some other party, they can bring that claim pro se as an assignee, even though their damages might be. And if you look to the Sprint Communications case, there's a very big issue on whether or not, not pro se, but whether or not even though the assignment was so limited in scope and they had no rights to the damages that they accrued through the litigation that they were prosecuting, the Supreme Court still held that as the assignees, they have the right to prosecute those claims. What if we're in a position, I mean, I think what's sort of tricky about this case for me is what if we're in a position where the relator does have his own interest, he's a real party in interest, but he's also bringing this action on behalf of the government. So it is, he does have his own case, it's just that it's inextricably linked to someone else's case. Is that the kind of a case that you think you can litigate pro se under the pro se statute? Do you know what I'm saying? He's got a case, so does the government, and they are bound together in this unholy alliance under this statute. What do we do with that? I think if you read this statute as a whole, when you go to the very next section of the statute, it goes through this analysis of when the government elects to bring their claim on their own behalf. Yeah, I guess I'm sort of asking you a question about the pro se statute, which says you have to be litigating your own case. Does it count as your own case if it's sort of partly, you do have your own case in this action, but it is linked up with somebody else's case? Is it still your own case under the pro se statute? I think it has to be. The analysis that the Supreme Court's done under the Article 3 standing is you have to have an injury to yourself. Right, I'm trying to give you all of that. He's got an injury to himself. He has his own case. He is a real party in interest. But what makes this case unusual is that his case is sort of linked to the government's case in an important way under this statute, given the res judicata implications. So what I'm asking you is whether, I guess I'm asking you about the meaning of own case under the pro se statute. Is it still your own case if you're dragging someone along with you? I think it would be, I think even though a claim might have other real parties in interest, it does not then immediately no longer become your own claim, Your Honor. I think that would limit the scope of that statute in a way that has not been read in the past. I think this court in the Myers v. Lounding case, where there was a decision regarding whether or not a parent could sue for First Amendment rights issues on behalf of himself, on behalf of his children, the court, even though the action was couched in terms of on his own behalf and on his children's behalf, and even though the appellant language said that you can file it and all these other issues that were read, the Fourth Circuit didn't say, or this court, I'm sorry, didn't say that because his children also had claims that were tied up in his claim, that he no longer had his own claim. They said he still retained his own claim, that he could bring pro se, and then they did their own analysis on whether or not the person applied. It reminds me of the cases like in a class action case, where we'll say a plaintiff can proceed pro se on his or her own claims, but not as a class representative, not if they're bringing all those other claims with them. Isn't it sort of like that? Because no one denies that that plaintiff has his or her own claim, Article III injury, absolutely valid right to be in court pro se, but not as a class representative. I think the difference, Your Honor, is that statute specifically makes that exemption. Congress lays that out specifically. So if the court reads the statute and makes the assumption, if you have your own claim, you have the right to proceed pro se, and then you read the statute, the onus should be on the party saying, requiring counsel to show no, the statute specifically states you cannot bring a pro se, which is what the class action statute says, specifically says that, whereas in this case there is not that specific language. So I would take the, or we would take the position that the court should assume, that without some congressional history or some specific, I'm sorry, I've completely blown up over time, but just to finish my point, if that's all right. You may, you may. That without some specific language, the onus should be to show that Congress intended something other than allowing your own claim, even though it might be tied with the government's claim, to be brought pro se. Thank you, Your Honors. Thank you. Ms. Upshaw. May it please the court, Amy Upshaw for Applebee's Ghana Corporation and South Carolina Electric and Gas Company. The relater in his reply brief concedes that every circuit to reach this question is in agreement that a relater pursuing a key TAM action under the False Claims Act needs to be represented by counsel. Those courts are correct, and they're correct for three reasons. First, the statutory right to proceed pro se in Section 1654 only authorizes an individual to represent himself in his own case. Second, a relater must represent the government's interests when it pursues a key TAM action under the False Claims Act. And third, policy considerations weigh in favor of the plain reading of Section 1654. But can I ask you, it's not like 1654 says you have to be litigating your own case and only your own case. And it, I mean, the relater is in some sense, right, litigating his own case. He's also litigating for the government, but he's also, you know, he's also litigating for himself. Your Honor, I think the key language there, own case, is important. I think a plain understanding of this term indicates that the case must be solely his. A simple example might help drive this point home. If a child boasts about having her own room, we know she doesn't share that room with any pesky siblings. So I do think here this indicates that. They share it with the parents, though, doesn't it? The parent walks in whenever he or she wants and say, what's going on? Maybe not a sibling, but a parent. It's still their own room, but it's not exclusive, is it? Maybe it's the siblings, but not the parents. So in relation to the other people who could be sharing this room. Did I miss something in response to that? What was your response to that? I mean, I gave, it was your analogy. I'm just trying to ask you, how does that follow? Is it still own? Yes, because I think how- Maybe I agree with you. That's a good point right here. The parent is the government, but it's still the own room. It's on the pro se litigant's case. Is that, maybe that's the fair reading of your hypothetical example? I'm just trying to understand. You raised it. You got to be careful you raise those things. I'm curious now. Your Honor, I think that the term own case does kind of take exclusivity. I think that when you hear the term own room, own case, own office, own car, that does connote exclusivity. And so the child has it as opposed to other children, other people. And the parents aren't probably using that room as their own bedroom as well, even if they do have some sort of rights to it. Here, the government's interests clearly are at play. Judge Harris pointed out this case must be brought for the person and for the government. But Congress was trying to get money back for the taxpayers. It seemed like the government is hardly ever interested, at least in this case. Do they want to get the money back from the alleged claim here? Any interest shown by the government to get it? Money, money, reclaim, to bring a suit on its own. Is the government interested in doing it? The government does have an interest in vindicating the false claims. In this case, have they done anything about it? Trying to bring a claim against the parties that allege you have gotten the money. I think you understand the question. Otherwise, you're here fighting the pro se who's trying to get money back for taxpayers, correct? The government has chosen not to intervene in this case. Why not? Likely because this claim is meritless. You don't know then. Your Honor, I think the reason why counsel is so important in these situations is because pro se litigants aren't necessarily Wait a minute, wait a minute, wait a minute. I know you say, well, it's always good to have a lawyer and all those things. It's very important to have a lawyer in a criminal case, wouldn't you say? Yes, Your Honor. You have a right to represent yourself. Yes, Your Honor, because only the interests of the individual are at stake. They're the interests of no one else are at stake. Oh, really? I thought it was the interest of all people, all citizens, that the Sixth Amendment is carried out and due process. We all have an interest to some degree. I think that's what really Gideon is all about. And that's why the law changed in the sense that it's beyond just notions of criminal justice required to there be some opportunities beyond just the individual. We thought that way in the Neanderthal way of our history of our jurisprudence, but we thought different after Gideon. So my point is this. You come here and you say, oh, yes, the pro se person is not adequate. But it's like baseball to some degree, isn't it? You know, if you get to somebody who never played baseball and they've got to face a pitcher, you know, it's hard to say I'm going to get a hit. But I've got a chance at least if I'm willing to swing. The government doesn't have any chance at all because they won't even swing the bat. But then it comes here and says how inadequate it is for the person who can't play baseball at least to swing. Don't you agree that at least there's some chance you're doing nothing and then you waste more taxpayer money to come here and say, oh, well, the pro se is inadequate, but you do nothing as a government to get money back from the taxpayer. It's kind of counterintuitive, don't you think? Your Honor, a couple of answers to that question. First, in a criminal proceeding, I don't think that anyone else is a real party in interest or has their interest settled under res judicatus. I do think this is distinct from that. We'll agree to disagree on that. Go ahead. As far as the government's interest, the government has an interest in vindicating the laws of the United States. To the extent there was no fraud here, to the extent that this is a meritless claim, I think the government is right in declining to intervene, declining to move forward. We can ask the government about this, but I have struggled to understand the claim. I thought it was a really unusual claim in that there's actually no allegation that any money was taken from the federal government. Isn't the idea that the defendants defrauded the state government into paying for these nuclear plants when they should have gotten the money from the federal government instead but didn't? That's my understanding. I can see why the federal government might not feel like it has a huge rooting interest in a case where there's no allegation that any federal funds were taken. That's exactly right, Your Honor. So what harm is there to the government for the pro se person to move forward here? I think there's harm. My whole point. Harm to the government because this can run out the clock of the statute of limitations for the government to be able to pursue any action in the future on these facts. To beyond the interest of the government. So you may have an interest then in the future in this case? No, Your Honor. The statute of limitations has now run. I know. So you agree then that this isn't an interlocutory appeal with the statute of limitations argument that the appellant made because this is an order without prejudice? Your Honor, I think the court can and should resolve the question on the merits and can do so here. But beyond the interest of the government that are at issue, the general presumption in favor of an officer of the court protects the courts themselves and it protects defendants. This litigation has been in the courts for five years now and it's only at a dismissal without prejudice stage. This is taxing on courts who have to read through often duplicative motions or facts that don't necessarily fit legal elements of any claim. And it can be costly for defendants to have to come in and to defend against, you know, sometimes meritless claims, sometimes frivolous claims. Well, this sort of goes, I guess, to Judge Thacker's question. But given that it's a dismissal without prejudice, this isn't really going to – even if we were to affirm, I assume the relator could come back into court tomorrow with a lawyer and we'd be batted again, right? I mean, this isn't going to end anything. Your Honor, in this specific case, my understanding is that the six-year limitation has run since the original actions that were complained of. Moreover, the government has had more than three years of knowledge of all these actions, so the government itself couldn't bring a claim either. In the future, of course, pro se litigants for other actions would be able to bring claims as long as they have a lawyer and are represented, and I think that is the point and purpose of resolving this is to set a precedent not only in this case but going forward that a litigant needs to have a lawyer in order to represent the interests of the United States government. I think the only policy point that the other side has made here is the concern that there might be some relators who are unable to get counsel. I respectfully submit I don't think that's a problem under the False Claims Act. The False Claims Act provides large incentives both for relators and for relators' counsel to take on these cases and to pursue them. Where there is some merit to these cases, lawyers will take them on and often do take them on under a contingency fee agreement. So to the extent that lawyers are sort of screening out wholly frivolous claims from moving forward, that is a feature of the system. I don't think that is a bug. If there are no further questions, I would ask that this Court affirm the District Court's judgment below. Thank you. Ms. Patterson. May it please the Court, Melissa Patterson for the United States as amicus. I think the case really turns on what it means to be one's own case within the meaning of 1654. And our understanding and the way the statute I think has pretty universally been applied is that it does mean purely your own case. And if other parties' interests are sort of along for the ride, you don't get to gamble with their rights by deciding to represent yourself in court. I think that the intersection of the two statutes, your own case in 1654 and the provision discussed earlier in 3730B specifying that you're suing for yourself and for the government indicates that Congress did not think that key TAM suits were the type of claim that could be brought pro se under 1654. Didn't say that, did it? I think that's the clear implication. Congress knows how to speak when it wants to speak. It did so in class action. It didn't say so. That's right, Your Honor. It doesn't say anything specifically about pro se representation in the False Claims Act, but of course the default rules in 1654. And I think if we look at how 1654 has been applied, I think the estate administrator context really crystallizes this point. If you're the sole beneficiary of an estate, you can represent the estate pro se, even though in a sense you're standing in for the estate, which is a separate legal entity. But many courts of appeals, and including this one in an unpublished decision, have said if there are any other beneficiaries to that estate, there are any creditors to that estate, you can't represent the estate because at that point others' interests are at stake too. So Judge Harris, you were asking about, well, he's got his own private interest here. We agree. But that's true in the estate context too. Folks, I mean, suppose you had 99% of rights to that estate. Somebody else has 1%. You don't get to stand in the shoes of that estate because somebody else's rights would come with you. We think this makes a lot of sense, and I think there is sort of a suggestion that it might be of no interest to the government to allow relators to proceed pro se. That's not the case, and I think the way this case unfolded shows why. The United States was never served in this case. Of course, under the usual setup, you have to serve the United States. The case remains under seal for 60 days while the government has a chance to investigate allegations before the defendants are put on notice of them. It's not that we chose not to intervene. It's that we were never served. We never had a chance to either investigate or to decline or to intervene or do anything, and that is because the relator did not, at least initially, did not properly complete the summons forms as directed to by the court. So I think that that shows that the United States really does have an interest in not allowing relators to proceed pro se in these cases, which, of course, you know, we're a real party in interest. We get 70% at minimum of any recovery in the False Claims Act. We are bound by the judgment that proceeds to the merits. So the United States has a very direct stake, even though relators also have their own private interests in these cases. Can I just ask you this, maybe just a terminology question? Yeah. So the government is a real party in interest. Is the relator also a real party in interest? Can there be two real parties in interest? I think so, Your Honor. The Supreme Court didn't put it in exactly those terms in Stevens, but the Supreme Court did make clear that the relator does have their own private interest by virtue of the statute's partial assignment. So we agree with relator that he has a private stake in a key tamper. Our point is that it's not an independent right, and it's only when a litigant has their own independent rights that they should be allowed to proceed under 1654. We agree that that's the sort of plain meaning of own case. But more importantly, that's how it applies in a number of different contexts. In partnerships, of course a partner has a stake in the rights of a partnership, but you don't get to stand in the shoes of the partnership if you have other partners. You'd be taking them along for the ride. Can I ask you just one other question? Does the government have a position as to whether the failure to obtain counsel is jurisdictional, whether it deprives a relator of Article III standing? This was dismissed, I think, under Rule 41B for failure to comply with the court order, but if this were just a 12B motion, would it be a 12B1 dismissal for no jurisdiction or just 12B6? I'm not sure, Your Honor. I would be inclined to think it's not jurisdictional. Of course, the district court gave the relator several chances to sort of cure the problem. I don't think it was a sort of fundamental jurisdictional defect in the pleading. We do think district courts have a fair amount of discretion to allow relators who may initially be pro se to find counsel. This is a curable problem, and I think most jurisdictional defects usually aren't. I'm happy to answer any questions. I suppose maybe just one more point about this court's decision in Myers. I think there was a suggestion by a relator's counsel that somehow this court did allow a parent to represent a commingled case. I think Myers pretty clearly says the opposite. Myers explained that under the Establishment Clause, parents and children each have their own set of rights in the claim there. And the court said, sure, the parent can represent himself on his own rights, but it specifically said we're not letting him sue on behalf of his child there. So as in Winkleman, the court viewed them as two separate, freestanding, independent sets of rights. The parent could proceed on his own rights, on the injury to himself, but not on those to his child. The court has no further questions. Yes, I have a further question. My question to your colleague was broader than just this case. Obviously, this case is different. But the government's position would be the same if, in fact, this were, hypothetically, a case where there was alleged fraud from the government and the government had to and was properly filed in terms of the notice and the application and you had your 60-day period and said, you know, we don't think that this has much to it. We're not going to do anything. You would take the same position if the relator came in as a pro se and said they don't have a right to bring it, wouldn't you, as a government? So I think there are sort of two different situations possible there. Suppose that the relator came in pro se, filed, as you said, did all the summons, so as soon as we get the claim, we would start investigating it. Suppose the government intervened at that point. At that point, I don't think that could well be. Are you changing my hypothetical? I just want to make clear that we think that might be a different case. In your case, I think my answer is yes. If we decline and they are just refusing to get counsel or can't get counsel and they want to litigate the case to termination for themselves and for the government, they need to find counsel. So you would take the same position. Like I said, even though you have no interest in doing anything to get the funds back, you would take the position that you would oppose them. Yes, because our rights, we are a real party in interest even when we decline. The relator is correct that that's what Eisenstein says. We definitely have a stake, and we decline a lot of cases. And just because we decline doesn't mean that the case won't go forward, doesn't mean that it shouldn't be represented by counsel. Do you think the executive is carrying out the legislative intent of the statute? The intent was to get money back for the government. And that's why it was amended in 1986, the Grassley Amendments, to make it easier for individuals to come. They have an interest, which I think you agree to. It agrees to have an interest, not sole interest. So you're telling me that's consistent to say the executive says, well, maybe fraud, may not be. We don't want to have anything to do. We're going to do nothing. But then when someone comes in as a relator, because they're pro se, you raise the flag of, oh, it's our interest. Isn't that defeating the congressional intent? I don't think so, Your Honor. Well, tell me why not. Because at the time when Congress has amended it, it's amended it repeatedly. You're right. That had always been the rule. Courts had been applying 1654, which, of course, has been in place since 1789. Courts? We're talking about the courts now. Forget about the courts right now. We're still talking about the congressional intent. Of course. But when Congress acts against the backdrop of sort of how a law has been implemented, if Congress was disturbed by the fact that courts were throwing out pro se relators, they could have changed that. But, of course, Congress has never indicated in the False Claims Act that a relator should be able to proceed pro se or that somehow 1654 doesn't apply to key TAM suits in just the way it applies to suits in a variety of contexts. So I think that by repeatedly amending the False Claims Act against a well-established backdrop, the relators can proceed pro se. I think it's something like five other circuit courts have now agreed and published opinions. Three other courts, and, of course, it's court in an unpublished decision, have all said there's no court that has ever suggested a relator can proceed pro se. And yet Congress, although repeatedly amending the False Claims Act, has never suggested there's a problem with that. And I think, again, returning to where we started, looking at the intersection, just the statutory language of own case with your suing for yourself and for the government, suggests Congress did not intend these suits to be litigated pro se. We ask this Court to affirm. All right. Thank you. Briefly, Your Honors, and we didn't go to any length in our briefs in this regard, but I think there might be an issue that I need to bring up, and that's in regards to many of the circuit's readings of the United States v. Onan case out of the Eighth Circuit. And it might help clarify, there's been a lot of statements made today about there's never been a case where pro se party, Congress assumed that because there's never been a case. The Onan case, even though it's been cited by many circuits for the proposition that a pro se, a qui tam relator cannot proceed, it was actually an opposite. I would highly recommend going back and reading the Onan case. In that case, there was two relators who bring a claim against some banks under the qui tam statute. They do some nefarious things, but they end up in front of a judge. They file an affidavit saying the judge should be recused because he spoke outside of the presence of the two relators to the defendants, and they talked about some stuff, said they should be recused, they were sanctioned. It's a long story, but in that case, the Eighth Circuit affirms an order of the circuit court, where the circuit court ruled that if for the next six months the U.S. government does nothing in this case, the two pro se relators can continue prosecuting the claim. Pro se, no requirement for attorneys. They affirm that decision in the case they discuss whether or not because there was a filed affidavit, and under the rules of civil procedure, that affidavit needed to be accompanied by a signed statement by counsel. So the court said, just because you're a relator under a qui tam statute, you're not allowed to sign as a counsel for the U.S. government, you don't have some rights through that statute to be counsel, and goes through this analysis. But it still affirms the decision, and I don't know what happened after that, but presumably they had the ability after that, if the U.S. government did nothing, to continue pro se. So in the 50s, courts clearly had no issue in affirming, and that circuit court had no problem with allowing a pro se litigant to file a qui tam action, pro se on its own behalf, and perhaps for the government, in the 1950s. I think that's important context for Congress, a reading of Congress, where to, how to, when you're making assumptions, because there's no clear, there has been no clear indication by anyone today as to what Congress intended. I think this court should assume, in opposite to what the U.S. government and what SCAN has said, that Congress did not intend to preclude pro se litigants. But with the backdrop of Onin, and with the backdrop that we assume these rights to proceed pro se, should instead assume that Congress intended to allow it, unless they specifically say something to the other effect. And I think that's it, unless there's further questions, we would simply ask that this court reverse the lower court's judgment. All right, thank you. Thank you.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris